MARY J. WHITE, Claimant, v. THE STATE OF NEW YORK.

No. 9603.

(State of New York, Court of Claims, September, 1911.)

Negligence — Proximate cause of injury — Cause of injury in general.
States — Claims — Liability of State in general.

> Where two persons are crossing a foot-bridge over a State canal and one of them calls the attention of his companion to something above their heads, and, as his companion turns in that direction, the former falls over a temporary railing on the side of the foot-bridge, at a point where the railing is low, and is killed, the primary cause of the accident is not the want of a better guard-rail but the decedent's inattention.

THE claimant's intestate was injured September 30, 1908, on a foot-bridge over the Erie canal at North Salina street in the city of Syracuse. The bridge spanning the canal was of a bascule pattern and was hung up at the time of the accident, being in process of construction. There was a foot-bridge on the east side elevated above the surface of the street approached by means of steps from the sidewalk and provided with an iron guard-rail. This railing, however, was not continued down the north steps but in place thereof there was a plank two inches by eight inches run along the edge of the steps. The intestate was walking over the foot-bridge and fell over the temporary railing, striking on his head and causing his death.

Costello, Burden, Cooney & Walters, for claimant.

Edward R. O'Malley, D. E. Brong and M. H. Quirk, for State.

Rodenbeck, J.   The claimant's intestate was injured September 30, 1908, on a foot-bridge over the Oswego canal at North Salina street in the city of Syracuse.   The bridge spanning the canal at this place is a bascule bridge and was hung up at the time of the accident.   It was in process of construction, and, during this period, there was a foot-bridge on the east side of the bridge, elevated above the surface of the street and approached by means of steps.   The contract for the construction of the bridge required some adjustment of the existing foot-bridge to the new conditions.   There was an iron railing on the east side of the foot-bridge which, however, was not continued down the north steps.   In lieu of a railing, a plank, about two inches by eight inches, had been placed along the edge of the steps.   The intestate and a companion were out sight-seeing and went to the bridge for the purpose of looking it over.   As they approached the north end of the foot-bridge, the intestate called his companion's attention to something on the bridge which was about the level of their heads; and, as his companion turned in that direction, the intestate fell over the temporary railing, striking his head and causing his death. · The place at which the intestate fell from the bridge was at the first descending step, where the plank railing would not reach much above his knee.   It was not, however, the absence of a sufficient guard-rail that caused the intestate's injuries, but his own inattention.   He did not stumble over any imperfection.   The intestate's companion says that he sort of reached for the rail and fell over, while another witness said that he threw both arms in the air and fell.   It seems a reasonable conclusion from all the facts and circumstances that, had the intestate observed such care as was reasonably to be expected under the circumstances, he would not have met with the injuries.   While there was a duty resting upon the State to see that the foot-bridge was in a reasonably safe condition, there was also an obligation on the part of claimant's intestate to use reasonable care.   The care which the claimant's intestate was required to observe was to be measured by the conditions.   He was familiar with the work that was in progress,

could see the foot-bridge was in process of reconstruction and it was his duty to use reasonable care in crossing.

The rule applicable to this case is clearly laid down in Nolan v. King, 97 N. Y. 565. In that case the plaintiff fell while descending the steps of a temporary sidewalk over an excavation for a building. The steps were of unequal height and width, and there was no guard-rail at the side. The court charged the jury that the defendant was under obligations to have the bridge so constructed that the plaintiff would not be subjected to any more personal risk than if the sidewalk had been there instead of the bridge. This rule the court said was erroneous. Judge Finch, writing the opinion of the Court of Appeals, said: " It is not to be expected, and cannot be required, that the temporary covering shall equal in safety and convenience the sidewalk removed, or that passengers may cross with as little heed and care as upon the completed pavement, and the duty of the builder is not to be thus measured until his work is done and opened to public passage as a completed sidewalk. The necessities of building involve some inconvenience to the public. Temporarily it must be borne in view of the other public benefit resulting from freedom of construction, and where it occurs the traveler is bound to observe its presence, and give to his passage some of the care and observation which he may assume to be unnecessary upon the completed sidewalk." P. 571.

In the case of Keating v. Metropolitan St. R. Co., 105 App. Div. 362, the degree of care required in a case like the one at bar is clearly set forth by Mr. Justice O'Brien. In that case a temporary passageway for teams and pedestrians had been constructed across a street, and the plaintiff caught her foot in a knot hole in one of the boards of which the passageway was constructed and was thrown down and injured. The court said that, when the plaintiff observed the permanent surface of the highway had been replaced by a temporary structure, she could not heedlessly disregard the precautions which the obvious situation suggested and assume that the highway was as safe as it was in its original condition. The court said: " No presumption arises from the

mere happening of the accident, nor upon proof of negligence on the part of the defendant can it be presumed that plaintiff was free from blame. (Weston v. City of Troy, 139 N. Y. 281; Reynolds v. N. Y. C. & H. R. R. R. Co., 58 N. Y. 248). She was bound to establish affirmatively that she used care and caution which an ordinarily prudent person would have used under the conditions which were shown to have existed. She knew that the roadway had been torn up, yet it does not appear that she took any precautions whatsoever to observe the condition of the temporary covering which had been placed over it. There is no evidence that she looked at the planks to find out how they were fastened in place or whether there were any defects in them, and under such circumstances the jury might have found that she did not use the care and caution which the situation demanded of an ordinarily prudent person." Whalen v. Citizens' Gas Light Co., 151 N. Y. 70; Beltz v. City of Yonkers, 148 id. 67; Weston v. City of Troy, *supra;* Coolidge v. City of New York, 99 App. Div. 175; Williams v. Village of Port Leyden, 62 id. 490.

It does not appear in the case at bar that the claimant's intestate used any precaution in crossing the foot-bridge. He went there for the purpose of looking over the new bridge, and his attention was undoubtedly directed from the foot-bridge to the bridge itself. He was under obligations to observe where he was going under the circumstances, and in this claim cannot rely upon the usual rule applicable to permanent sidewalks. The circumstances of the accident, as detailed by the companion of the intestate and other witnesses, do not show the absence of contributory negligence as laid down in the rule in the cases cited; and the claim for that reason should be dismissed.

SWIFT, P. J., and MURRAY, J., concur.

Claim dismissed.